## Messner *versus* Lancaster County.

1. A bond was conditioned for the payment to the county of the one-third part of the expense of erecting a bridge "when *the superstructure* shall be completed," it being stated in the bond that the contribution induced the commissioners to agree to the building of the bridge. In the agreement with the contractor of the same date, it was stipulated that the county pay a specified sum for the erection of the bridge, retaining a definite amount "until the completion of the work, that is to say, until the same shall be approved and passed by men to be appointed by the Court according to law."

*Held,* that the superstructure was to be considered as complete when approved of by the viewers, notwithstanding some portions of the contract, such as whitewashing of a portion of the bridge, and some of the filling remained unfinished. For such deficiency the obligor might have been entitled to a deduction from the amount unpaid on the bond.

2. Any error in the admission of parol evidence of the price of the bridge was cured by the production of the written contract.

ERROR to the Common Pleas of *Lancaster county.*

The county of Lancaster brought suit to November Term, 1852, against Isaac Messner, on a bond, dated 22d April, 1851, executed by him and Richard Davis to the county of Lancaster in the penal sum of $716.66, conditioned for the payment to the said county of the one-third part of the expense of erecting a bridge over Muddy creek in said county, "when the superstructure shall be completed." It was stated in the bond that the "proffered contribution" was the inducement which moved the county commissioners to agree to the building of the bridge.

In the agreement between the contractor and the county for the building of the bridge, of the same date as the bond in suit, there were specifications as to the character of the bridge to be built; the timber was to be of good quality, and *the whole* of the bridge to be whitewashed; the abutments were to be well grouted with strong lime, and the rest of the walling to be well mortared, &c.; the joints to be pointed from the surface of the ground to the top of the walls, to be filled in with earth or gravel so as to make it easy of ascent or descent. The bridge was to be subject at all

[Messner *v.* Lancaster County.]

times to such alterations as the commissioners of Lancaster county might from time to time direct.

On the part of the county it was agreed that the county pay to the contractor $1075 in monthly payments, retaining $350 of the last payment "until the completion of the work, that is to say, until the same shall be approved and passed by men to be appointed by the Court according to law."

Three persons appointed by the Court reported that they had viewed the bridge, and considered that the same had been erected of good and substantial material, in a proper and workmanlike manner, and therefore they approved of it. Their report was dated the 14th November, 1851.

Partial payments had been made on the bond.

On the trial, after the bond was read, it was offered on the part of the plaintiff, to prove the contract price for building the bridge. It was objected that the contract was *in writing*. The evidence was admitted. The contract was afterwards read.

It was proved that the *superstructure* was finished in November, 1851; that *the sides* were whitewashed, but the gable ends were not. The witness said the matter was settled with the contractor so far as he knew.

On the part of *the defendant*, it was offered to prove that the superstructure was not finished according to the contract, and that when the viewers examined it, the bridge could not be driven over. Objected to, but admitted. It was testified that the filling was not done when the viewers examined it. That *the ends* of the bridge were not whitewashed, and the gable ends not plastered, &c. The *superstructure* was finished when the viewers were present, but the filling was commenced in the week following.

Another witness stated that the contractor did not finish the abutments; that though the bridge had been used since November, 1851, the last filling was not put in till November, 1853, and that it was not done by the contractor.

Long, J., charged that the bond did not warrant the conclusion that the bridge was to be erected according to the contract between the county and the contractor; and if it did, that there was a clause in the contract authorizing the commissioners to make altera-tions; and if the bridge were not built according to contract, the jury, after the report had been approved by the Court and the money paid by the commissioners, would be justified in supposing that if any alteration was made, it was done by consent of the commissioners. He further said that if there were defects in the bridge, the defendants might be allowed a deduction on their account, as he considered that the commissioners were bound to have erected a bridge suitable to the place.

May 24, 1853, verdict for plaintiff for $96.90.

[Messner *v.* Lancaster County.]

Error was assigned to the admission of the parol evidence as to the contract price for erecting the bridge; and secondly, to the portion of the charge before specified.

*Amwake,* for plaintiff in error.

*Eshelman,* for the county, the Court declined to hear.

The opinion of the Court was delivered by

WOODWARD, J.—The obligation of the defendant was to pay to the county of Lancaster one-third part of the whole expense of erecting a bridge across Muddy creek, "*when the superstructure shall be completed.*" The contract between the county and the builder of the bridge, of the same date with the obligation of the defendant, stipulated for a bridge of specified dimensions and workmanship, with the right of the county to make alterations from time to time, and for the payment of $1075 as the full consideration, retaining in their hands $350 "until the completion of the work, that is to say, until the same shall be approved and passed by men to be appointed by the Court according to law." The bond of the defendant, and this contract between the commissioners and Shaffer, the builder, though distinct instruments, were dependent, for the bond recites that the proffered contribution of the defendant was the inducement which moved the commissioners to agree to build the bridge.

Now when can it be said that the superstructure of a bridge built under such agreements is complete? Manifestly when viewers appointed by the Court pronounce it finished, which viewers so appointed did do on the 14th day of November, 1851. On that day then the defendant's liability attached, which can be discharged only by his paying what remains due on his bond. Notwithstanding some whitewashing, pointing of walls, and filling in of embankments remained to be done when the viewers were there, the evidence proved what the certificate of the viewers verified, that the structure was complete, and we think the Court put the case to the jury quite as favorably for the defendant as he deserved. When a man induces a county to undertake the erection of a bridge, by promising to pay one-third of its cost on completion of its superstructure, and its completion is ascertained in the manner stipulated in the contract which he induced the county to make, he is as nearly destitute of a defence as it is possible for a litigant to be. There is no lack of consideration for his promise, and I see not how he can expect to escape performance of it.

If there was any error in admitting the testimony of Peter G. Eberman as to the price of the bridge, it was cured by the subsequent production in evidence of the contract itself.

The judgment is affirmed.